## KAISER & BROTHER v. UNITED STATES NATIONAL BANK et al.

Simmons, C. J.—1. Where a promissory note executed solely for the accommodation of a bank, and intended by the makers to be used for its benefit only, was made payable to the order of its cashier and indorsed in blank, the mere fact that the president of that bank negotiated the note for his own personal benefit to a third person who knew he was such president, would not of itself be notice to that person that this action of

the president was unauthorized or improper, nor would this fact be sufficient, without more, to put the third person upon inquiry as to the legality or correctness of the president's conduct in the premises.

2. A creditor of the president who in good faith received the note from him before its maturity and without notice of the equities existing between the makers and the payee, was a *bona fide* holder for value in the due course of business, although the creditor took the note as collateral security for an existing debt of the president, and for this purpose and upon this consideration only.  Colebrook on Collateral Securities, §18, 1 Morse, Banks and Banking, §600, and authorities cited in both; *Gibson* v. *Conner*, 3 *Ga.* 47.                    *Judgment affirmed.*

July 20, 1896.  By two Justices.

Complaint on note.  Before Judge Sweat.  Glynn superior court.  May term, 1895.

The United States National Bank sued A. Kaiser & Brother as makers, and the Brunswick State Bank as indorser, upon a promissory note for $2,500, dated May 3, 1893, due sixty days after date, payable to the order of "F. E. Cunningham, cashier," and indorsed: "Brunswick State Bank, Brunswick, Ga.  F. E. Cunningham, cashier."  The suit was defended by the makers.  The jury, under the court's instruction, found for the plaintiff, and defendants' motion for a new trial was overruled.

It appears from the evidence, that defendants were accommodation makers, and received no consideration for the note.  On May 17, 1893, they were requested by F. E. Cunningham, who was the cashier of the Brunswick State Bank, to lend that bank their credit to the amount of the note, for the purpose of having it discounted in New York and putting said bank in funds in that city.  At Cunningham's request the note was dated back to the time appearing on its face.  On May 18, it was indorsed as before stated, by Cunningham, who forwarded it on the same day or soon after to Lloyd, the president of the Brunswick State Bank, who was in New York, with a letter of instructions as to the purpose for which it was sent.  The indorsement

upon it was made for the purpose of raising funds in New York for the Brunswick State Bank. On May 29, it was received by the plaintiff from Lloyd, as collateral security for an indebtedness already existing from the firm of Lloyd & Adams to the plaintiff. Plaintiff knew that Lloyd was president of the indorser bank, and received the note without parting with any new consideration, and solely as collateral security for the notes which it had previously discounted for Lloyd & Adams, and which are yet due to plaintiff. It had no account with the indorser bank. That bank failed and was insolvent on May 24, 1893, when it closed its doors.

In addition to the general assignment of error in directing the verdict, the motion for new trial alleges that the court erred in refusing to allow the cashier of the indorser bank to answer the questions: "When that note left here and reached New York State, whose property was it? What is the custom of a bank receiving paper from an indorsee, with regard to whether or not the indorsee shall indorse that paper; what is their custom as to requiring indorsements from the indorsee?"

*W. G. Brantley* and *Symmes & Bennet*, for plaintiffs in error. *Atkinson & Dunwody*, contra.