30264. HUDGINS TRANSFER COMPANY *v.* LAW *et al.*

Decided February 2, 1944. Rehearing denied February 22, 1944.

*Carl T. Hudgins,* for plaintiff in error. *Joseph G. Collins, J. M. Johnson, Pierre Howard, J. F. Kemp, Clint W. Hager,* contra.

FELTON, J. 1. There is no merit in the contention that the plaintiff below had no right to amend counts one and five, and amend the petition by adding count six. We can find no precedent on this question, but the case was reversed and the trial court reinvested with jurisdiction. The plaintiff could add additional counts, provided they were good and were based on the same cause of action, and we see no reason why he could not amend those which had been held to be bad, since the effect of their being bad did not result in a dismissal of the case. The situation here is not analogous to a case where a demurrer to a petition has been sustained and the action dismissed, and an appellate court has affirmed the dismissal. In such a case the trial court has no further jurisdiction of the case but to give effect to the appellate court's judgment.

2. The effect of the ruling on the former appeal was to sustain the ruling on the general demurrers to counts one and five of the petition, and reverse the ruling on general demurrer to count four.

The special demurrers were not considered. The opinion shows that the rulings on general demurrers were considered.

3. Special grounds 1, 3, 4, 5, and 6 except to a failure to charge a request on ratification. Special ground 3 excepts to a charge on ratification. In view of the fact that the evidence demanded a verdict for the plaintiff for more than the jury found, whatever errors the court committed in his charge or refusal to charge were not harmful.

4. Reduced to final analysis the plaintiff's claim in this case is that the plaintiff was to put his trucks on the job; that Wimpy and the transfer company were to pay him the rent paid by the government for their use plus the value of each truck on recapture by the government; that the defendants had collected for rent and recapture value an excess over the amount paid to the plaintiff, and the defendants owed that amount to the plaintiff for money had and received. The plaintiff's theory is that Wimpy entered into the joint oral and written agreements with him, and that he had authority to enter the joint contracts on his own and the transfer company's behalf, and that the company ratified the agreement by its knowledge of it and failure to do anything in disaffirmance of it. The transfer company's contention is that it made no contract with Law and did not ratify any which Wimpy made with him. Most of the exceptions deal with these contentions of the transfer company. We are of the opinion that taking the transfer company's view of the facts, it is liable as a matter of law for the full amount sued for. The transfer company admits that it agreed with Wimpy that he could place a number of trucks on the job. As it received the rent from the government through the main contractors it agreed to pay and did pay the full amount to Wimpy for his own trucks, and to Wimpy and Law for Law's trucks, without any deduction for upkeep or repairs. The transfer company treated Law's trucks as Wimpy's, and contends it did not deal with Law at all. The transfer company collected the amounts sued for, and has not paid them to either Wimpy or Law. While the alleged contract does not cover the recapture phase prior to the time when the rentals equalled the appraisal value, the transfer company could not in equity and good conscience retain the recapture value paid by the government on Law's trucks. The transfer company cannot now assert a right to a deduction for upkeep and repairs on

Law's trucks, because its agreement with Wimpy was that he should receive all rentals on trucks considered as his without deduction, and Law's agreement with Wimpy was that Law should receive the rental without deduction. So the transfer company has in its possession money belonging to the plaintiff which it cannot in good conscience retain. The sum and substance of the agreement between the transfer company and Wimpy was that Wimpy could put trucks on the job and receive the rentals and purchase price from the transfer company as it received them, and without deduction for upkeep and repairs. The transfer company and Wimpy had some kind of arrangement for repairing the trucks, each bearing part of the expense by furnishing mechanics, etc. Law's agreement with Wimpy was that Law would put trucks on the job, and that Wimpy would collect for him the rentals and recapture price and pay it to him. There was no agreement that any deductions would be made for upkeep and repairs on Law's trucks. The agreements simply resulted in an obligation on the transfer company to collect as agent for Wimpy, and on Wimpy to collect as agent for Law. The money collected by the transfer company on the trucks put in by Wimpy, or on his part of the arrangement was held in trust for the rightful owners. The transfer company is now seeking to charge for upkeep and repairs on Law's trucks. So far as the transfer company is concerned they were Wimpy's trucks, and under the contract between Wimpy and the company it had no right to charge for upkeep and repairs. The transfer company studiously avoided dealing with Law, or having any agreements with him, and the company insisted to Wimpy that Law was Wimpy's "baby." The transfer company is now contending that it is dealing with Law, and that Law owes it for upkeep and repairs. Wimpy had no agreement with Law about repairs, and is claiming none, and the transfer company is not injured by Wimpy's failure to protect himself on that phase of the matter. If anybody can charge Law for upkeep and repairs it is Wimpy. The record in this case is voluminous, and it would serve no useful purpose to set it out in substance. The transfer company admitted receiving rentals and recapture value on Law's trucks in the sum of $8182.32, and admitted paying therefrom to Law and Wimpy only $6385.01, which leaves a balance due of more than the verdict rendered. The judgment is against the company alone, but if there can be any

technical objection to its having been so rendered the plaintiff does not except to it, and the company is not in position to complain when it has the money sued for in its possession. However, the verdict and judgment are not excepted to on the ground that they should have also been against Wimpy.

5. It was not error to strike that part of the transfer company's amendment to its answer which sought to set off damages alleged to have resulted to the company by reason of Law's alleged participation in fraudulently putting on the job a truck belonging to one Chambers, which had an incumbrance on it which was concealed from the transfer company and other parties interested. A claim arising in tort cannot be set off against one in assumpsit in a city court. *Jones* v. *George S. Riley Jr. Company,* 14 *Ga. App.* 84 (80 S. E. 341); *Gormley* v. *Chance,* 55 *Ga. App.* 838 (191 S. E. 701).

6. Ground 7 of the motion contains an exception to the admission of checks from Beers Construction Co., payable to Hudgins Transfer Co. Inc., totalling $119,047.62. Such admission was not harmful for the reason that the transfer company admitted receiving the amount sued for and that it had not paid it. Ground 8 is an exception to admission of testimony of a witness for the plaintiff who testified as to the valuations of the trucks and what the books showed as to rentals, etc. The testimony was harmless in view of the transfer company's admissions shown in division 4 of the opinion. Ground 9 contains a similar point and the error, if any, was harmless. The same applies to ground ten complaining of the admission of time records showing accrued truck rentals and recaptures. Exhibit A did not purport to cover a situation where the government recaptured a truck before rentals consumed the valuation put upon it. Law's testimony as to his agreement with Wimpy that he was to get the recapture price was not objectionable as contradicting or changing the terms of the written agreement, nor on the theory that Wimpy did not have the authority as agent to bind the transfer company. He was entitled to the recapture value in the absence of an agreement to the contrary.

7. Ground 13 complains that the court erred in not permitting the attorney for the transfer company to cross-examine Wimpy after the plaintiff had put him on the stand and examined him. Assuming for the sake of argument that he (Wimpy) was not called to the stand by the plaintiff as an adverse party for the purpose of

cross-examination, the transfer company does not show that the refusal of the court to allow the company to cross-examine him was harmful, for the reason that it contends that it should have been allowed to cross-examine him on the question of authority to act as agent for the company, and on the question of ratification. As we have shown before these questions were not in the case, and it was utterly immaterial whether Wimpy acted as agent for the company or not, so far as the liability in this case is concerned and whether there was a ratification of his acts. The rest of Wimpy's testimony is not disputed.

8. It was not error to exclude evidence offered by the transfer company to explain the valuations put on the trucks by the government, the theory being to show that the valuations were high so as to allow for the expense of repairs and upkeep. Such evidence was not admissible because the transfer company received the recapture values from the government and had no right under an agreement with either Wimpy or Law to deduct for repairs or upkeep on Law's trucks.

9. The court did not err in failing to charge a full definition of a contract. If there was any error it was harmless as the evidence demanded the verdict.

10. There was no error in overruling the transfer company's demurrers and motions, and in overruling the motion for a new trial. *Judgment affirmed. Sutton, P. J., and Parker, J., concur.*